547 So.2d 966 (1989)
Milton D. NINIA, Appellant,
v.
SOUTHWEST BOTTLERS and Liberty Mutual Insurance Company, Appellees.
No. 88-1856.
District Court of Appeal of Florida, First District.
July 21, 1989.
*967 Peter C. Burkert, of Burkert & Hart, P.A., Fort Myers, for appellant.
Randal H. Thomas, of Henderson, Franklin, Starnes and Holt, P.A., Fort Myers, for appellees.
JOANOS, Judge.
Claimant in this workers' compensation case appeals the deputy commissioner's denial of his claim for temporary partial disability or wage loss benefits. The sole issue presented for our consideration is whether the deputy commissioner erred in determining that no benefits were due. We affirm in part, and reverse in part.
On September 20, 1986, claimant suffered a compensable low back injury in the course of his employment as a route salesman for Southwest Bottlers, a Pepsi Cola distributor. Claimant's work experience has been limited, for the most part, to various aspects of the soft drink business. When he started working for Southwest Bottlers in April 1985, his first work assignment was loading trucks. He then worked as a checker, and was working as a route salesman when he sustained the injury which is the subject of this appeal. The record reflects that claimant has no history of prior back injuries, or of any other workers' compensation injuries.
Claimant was treated by Dr. White, an orthopedic surgeon. In an office note dated October 30, 1986, Dr. White indicated that at that time claimant could return to work in a management position, which would not require any lifting of heavy soda cases. When claimant returned to work on November 6, 1986, he was given a job as route manager, a supervisory position consistent with his medical restrictions. Dr. White's office note of November 21, 1986, again emphasized that although claimant could function in a supervisory capacity, he should not attempt to lift heavy cases of soda, since in all probability such conduct would result in a recurrence of his symptoms.
Claimant then worked on a full-time basis until December 31, 1986, when he was terminated. The termination occurred after a customer on his route alleged that claimant offered to sell redeemable discount coupons for cash. Claimant denied the accusation, and requested an investigation, including a check of the discount coupons and a polygraph test. Neither of these steps was taken, and claimant was summarily dismissed.
Subsequently, claimant applied for unemployment benefits. After four appeals, he received benefits and was placed on a work search. Claimant testified that during the course of his work search, he talked with the management personnel of five or six vending companies, at which time he advised prospective employers that he could work in a supervisory capacity, but could not work in any capacity that involved heavy lifting. In each instance, claimant was told the company was not hiring at that particular time.
The parties stipulated that claimant received unemployment compensation for twenty-six weeks, from January 24, 1987, *968 until July 18, 1987. Claimant testified without contradiction that during this period, he made three calls a day, and reported to the employment office every five or six weeks, as directed. Claimant further stated that he turned in records of his job search to the unemployment office, but did not keep copies for himself. The attorneys for the respective parties stipulated that an attempt had been made to obtain claimant's job search records from the unemployment office, but they had been destroyed.
After his unemployment benefits expired in July 1987, claimant continued to search for work. Counsel for employer/carrier acknowledged that claimant was not provided with the appropriate forms for temporary partial disability benefits until October or November 1987. Once the forms were provided, claimant filed them in accordance with the instructions given by the carrier's representative. Later, he was advised that the carrier had determined not to pay benefits. Although claimant submitted no more forms after being advised of the carrier's decision, he testified that he continued to look for work.
In denying the claim for temporary partial disability benefits, the deputy found that claimant's testimony concerning his job search was vague and nonspecific, and that some job search lists furnished by claimant were not credible. The deputy further found that the medical evidence demonstrated that claimant could return to work with minimal restrictions, that his loss of earnings was not due to his restrictions, and that claimant had voluntarily limited his income by not making a good faith effort to return to work.
It is well settled that entitlement to temporary partial disability benefits requires evidence of a conscientious work search, or a medically justifiable reason to excuse the work search requirement. Hill v. Baptist Hospital, 464 So.2d 1350 (Fla. 1st DCA 1985). Generally, the adequacy of a claimant's work search is a question of fact for the deputy. However, the good faith of the work search should be determined in light of all the existing circumstances, which would include such matters as claimant's age, physical impairment, industrial history, training, education, motivation, work experience, and work record. Ringling Brothers Barnum and Bailey Circus v. O'Blocki, 496 So.2d 947 (Fla. 1st DCA 1986). See also Paramount Poultry v. Mims, 472 So.2d 1281 (Fla. 1st DCA 1985); Simpson Motors v. Wilson, 453 So.2d 140 (Fla. 1st DCA 1984); Whitehall Corp. v. Davis, 448 So.2d 47 (Fla. 1st DCA 1984). Furthermore, a work search is not a prerequisite to receipt of benefits where the employer/carrier fail to advise the claimant of his obligation to perform a work search. Coq v. Fuchs Baking Co., 507 So.2d 138, 141 (Fla. 1st DCA 1987). See also Griffith v. McDonalds, 526 So.2d 1032, 1033 (Fla. 1st DCA 1988); Rios v. Fred Teitelbaum, 522 So.2d 1015, 1017 (Fla. 1st DCA 1988).
It is also a settled principle that credibility issues and the weight of the evidence are to be resolved by the deputy. Brown v. Winter Haven Citrus Growers Association, 175 So.2d 193 (Fla. 1965); Simpson Motors v. Wilson, supra; Clay Hyder Trucking v. Persinger, 416 So.2d 900 (Fla. 1st DCA 1982). On the other hand, once a claimant has made a prima facie showing of a good faith work search, it is improper to deny benefits based on a finding that claimant's testimony was not credible, when the lack of credibility has no apparent support in the record. Carroll v. Belknap, Inc., 536 So.2d 1056 (Fla. 1st DCA 1988); Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987); Irving v. City of Daytona Beach, 472 So.2d 810 (Fla. 1st DCA 1985).
Finally, even though a claimant is justifiably fired for reasons unrelated to his injury, "he may still be eligible for wage loss benefits if his injury left him with a condition which prevents him from obtaining employment within his abilities at his prior wages." Sparks v. Aluma Shield Industries, 523 So.2d 680 (Fla. 1st DCA 1988); Lamazares v. Rinker Southeastern Materials Corp., 519 So.2d 34 (Fla. 1st DCA 1987); Whalen v. U.S. Elevator, 486 So.2d 670 (Fla. 1st DCA 1986); Johnston v. *969 Super Food Services, 461 So.2d 169 (Fla. 1st DCA 1984).
In light of the foregoing, we conclude the deputy improperly denied temporary partial disability benefits for the period claimant satisfied the work search requirement for unemployment compensation benefits, and for that period during which the employer/carrier were silent concerning claimant's work search obligation. First, it is undisputed that employer/carrier did not advise claimant of his obligation to perform and to document a good faith work search until October or November 1987. Second, it is undisputed that claimant satisfied the work search requirement for unemployment compensation benefits, and received unemployment compensation for a 26-week period. It was stipulated that the unemployment work search records have been destroyed. By the same token, claimant presented evidence of a work-related physical impairment which hinders his ability to return to his former employment, and his uncontroverted testimony indicates that his unsuccessful work search was due in part to his physical impairment.
Therefore, we conclude that the deputy's determination that claimant's work search lists were not credible will support the denial of temporary partial disability benefits only for the period after October 1987 when claimant's unemployment compensation benefits were exhausted and the employer/carrier advised claimant of his obligation to conduct a work search. However, there is no support for such denial during the period from January to July 1987, when claimant's receipt of unemployment compensation constituted prima facie evidence of an adequate job search. Nor is there support for such denial through October 1987, since counsel for employer/carrier acknowledged that claimant was not apprised of his rights and responsibilities with respect to possible entitlement to workers' compensation benefits until October or November 1987, well after the expiration of claimant's unemployment compensation. In the circumstances, claimant's satisfactory compliance with the unemployment work search requirement, together with employer/carrier's failure to advise claimant of his duty to perform and to document a good faith work search, excuse a separate and discrete workers' compensation work search for this period.
Accordingly, we affirm the denial of temporary partial disability benefits for the period after October 1987. However, we reverse the denial of benefits for the periods from January 24, 1987, through July 18, 1987, and July 19, 1987, through October 1987, which period encompass the time when claimant was receiving unemployment compensation benefits and the time when claimant had not been apprised of his work search obligation, and remand for entry of an order awarding wage loss benefits and temporary partial disability benefits which exceed the amount of unemployment compensation received during the pertinent time periods. See Hill v. Baptist Hospital, 464 So.2d at 1352.
BOOTH and MINER, JJ., concur.