549 So.2d 1386 (1989)
Charles BAGGETT, Appellant,
v.
MULBERRY CONSTRUCTION COMPANY and adjustco, Appellees.
No. 88-1231.
District Court of Appeal of Florida, First District.
August 31, 1989.
Rehearing Denied November 7, 1989.
Dean Burnetti, of H. Guy Smith, P.A., Lakeland, for appellant.
Lamar D. Oxford, of Dean, Ringers, Morgan & Lawton, Orlando, for appellees.
*1387 JOANOS, Judge.
Charles Baggett appeals a workers' compensation order in which the deputy commissioner denied his claim for temporary partial disability benefits. The narrow question raised in this appeal is whether the deputy commissioner erred in failing to apply the deemed earnings provisions to Baggett's temporary partial wage loss for the period from December 18, 1981, through August 31, 1987. We reverse.
On September 9, 1981, Baggett sustained crushing injuries when a 1,200 pound steel plate slipped and fell on him. Baggett has been a structural steel worker since 1961, and was so employed with Mulberry Construction Company (Mulberry) when the accident occurred. The record reflects that although Baggett was examined by numerous physicians for several years following the accident, the precise nature of his continuing pain and lack of right shoulder mobility were not discovered until 1984, when Dr. Surgnier, an orthopedic surgeon, found he had a fracture of the extreme distal end of the clavicle, that was involved in the achroclavicular joint. Dr. Surgnier recommended surgery, and stated that he could determine whether Baggett would have any permanent residuals from the accident after surgery was performed. In Dr. Surgnier's opinion, Baggett has been temporarily totally disabled since the September 1981 accident.
Subsequent medical examinations in 1986 and in 1987, confirmed Dr. Surgnier's diagnosis, and further revealed that Baggett also suffers from cervical disc disease and separation of the right shoulder joint, attributable to the industrial injury on September 9, 1981. In the opinion of Dr. Rechtine, an orthopedic surgeon who examined Baggett on February 19, 1988, and Dr. Earp, an orthopedic specialist who examined him on March 30, 1988, Baggett should be restricted to part-time light duty work, with limitations on weight lifting of no more than twenty to twenty-five pounds, no overhead reaching on a repetitive basis, and no work that requires shoulder movement.
Baggett was first released to light duty work in October 1981, and again in December 1981, before the full extent of his injuries was understood. Baggett testified that when he returned to work at Mulberry, he did everything that he was directed to do, but was unable to perform his work properly. Baggett also stated that "there is no such thing as light duty on a job like that."
The record further reflects that due to economic hardship caused by his inability to work, Baggett was unable to maintain his union membership, and unable to make payment on property he and his wife had purchased three years before. In January 1982, Baggett and his wife moved to Altha to live with his wife's parents. Although Baggett's shoulder continued to cause him problems, he returned to Polk County in February 1982, in an effort to continue as a structural steel worker. In February and March 1982, he worked on a dragline for W.R. Grace Company, but was laid off on April 2, 1982. Baggett then returned to Altha, where he assisted his wife in the operation of a group living facility she had installed in her parents' home during the two-month period that he was working in Polk County.
The record indicates that the work performed by Baggett in connection with operation of the group living facility would be classified as light duty. He acknowledged that he did not look for other work during the time he worked with his wife in the Altha venture. The record also reflects that the employer/carrier did not advise Baggett concerning his rights and duties with respect to wage loss or temporary partial wage loss benefits, or of his duty to perform and to document a good faith job search. On August 15, 1987, Baggett and his wife separated, and he returned to the central Florida area. From that time forward, on the advice of his attorney, Baggett performed and documented a job search.
Based in part on the testimony of the employer/carrier's rehabilitation specialist, the deputy commissioner found that since December 1981, Baggett has had the ability *1388 to earn at least $6.00 per hour for a forty-hour work week. The deputy further found that wage loss benefits should be paid on the basis of $240 per week from September 1, 1987, through May 12, 1988, and continuing, until changed facts indicate otherwise. The claim for temporary partial disability benefits from December 18, 1981, through August 31, 1987, was denied, based on the finding that Baggett removed himself from the job market during that period of time in order to devote his time to the operation of the group living facility. The deputy characterized Baggett's conduct as a predesigned business decision that was not injury related.
At the outset, we note this court has determined on numerous occasions that a claimant's obligation to conduct a good faith work search is excused where the employer/carrier fail to advise the claimant of his rights and responsibilities under the Workers' Compensation Act. Ninia v. Southwest Bottlers, 547 So.2d 966 (Fla. 1st DCA 1989); Mackin v. Olde World Cheese Shop, 536 So.2d 301, 303 (Fla. 1st DCA 1988); Griffith v. McDonalds, 526 So.2d 1032, 1033 (Fla. 1st DCA 1988); Rios v. Fred Teitelbaum Construction, 522 So.2d 1015, 1017 (Fla. 1st DCA 1988); Lopez v. Nabisco Brands, Inc., 516 So.2d 993 (Fla. 1st DCA 1987); Coq v. Fuchs Baking Co., 507 So.2d 138 (Fla. 1st DCA 1987); Morris v. Metal Industries, 491 So.2d 312 (Fla. 1st DCA 1986); DeFrees v. Colt and Dumont/Hit Sales, 483 So.2d 848 (Fla. 1st DCA 1986).
It is undisputed that employer/carrier in this case failed to advise claimant of his work search obligation or of his possible entitlement to workers' compensation benefits. Generally, this dereliction on the part of the employer/carrier would entitle claimant to wage-loss benefits calculated on the basis of actual wage loss during the time period at issue, as opposed to wage-loss benefits calculated on the basis of deemed earnings. See Mackin v. Olde World Cheese Shop, 536 So.2d at 302-303.
Here, the deputy commissioner made no express finding concerning claimant's failure to conduct a work search for the period from December 18, 1981, through August 31, 1987, the period for which all benefits were denied. Rather, the deputy commissioner found that claimant's decision to operate the group living facility with his wife was not related to his on-the-job injury. Although claimant noted in his initial brief that his failure to perform a work search for the time period at issue should be excused due to employer/carrier's failure to advise him of his rights and responsibilities, the primary argument advanced in the initial brief and the reply brief is that claimant should be awarded temporary partial wage-loss benefits based on the deemed earnings provision of section 440.15(4)(b), Florida Statutes (1981), for the December 18, 1981, through August 31, 1987, time period. Thus, the issue raised in this appeal and the arguments advanced in support thereof indicate that claimant is in essential agreement with the deputy commissioner's determination that benefits should be calculated on the basis of deemed earnings. In the circumstances, we find there has been an implicit waiver of possible entitlement to wage-loss benefits based upon actual earnings.
The "deemed earnings" provision of section 440.15(4)(b), Florida Statutes (1981), states in part:
In the event the employee voluntarily limits his income or fails to accept employment commensurate with his abilities, the salary, wages, and other remuneration the employee is able to earn shall be deemed to be the amount which would have been earned if the employee did not limit his income or accepted appropriate employment. Whenever a wage-loss benefit as set forth in paragraph (a) may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury.
It is well settled that it is the claimant's burden to establish a causal relationship between his compensable injury and any subsequent wage loss. City of Miami v. Gray, 434 So.2d 1009 (Fla. 1st DCA *1389 1983). This causal connection between an industrial injury and a subsequent wage loss should be determined in light of the totality of the circumstances. Mathis v. Lewis Bear Company, 511 So.2d 663 (Fla. 1st DCA 1987); Rodriguez v. Sheraton Bal Harbour Hotel, 509 So.2d 369 (Fla. 1st DCA 1987). In this connection, the principle is well settled that "[w]age loss benefits are not precluded after a period of successful post-injury employment, even if such employment is terminated for a reason unrelated to the injury." Mathis v. Lewis Bear Company, supra; Williams Roofing, Inc. v. Moore, 447 So.2d 968 (Fla. 1st DCA 1984); Genelus v. Boran, Craig, Schreck Construction Company, 438 So.2d 964 (Fla. 1st DCA 1983); Lasher Miller Company v. Brown, 427 So.2d 1034 (Fla. 1st DCA 1983).
Rodriguez v. Sheraton Bal Harbour Hotel is factually similar to this case. In Rodriguez, following an injury and a medical release to light duty, the claimant returned to his former job which involved manual labor, even though his medical restrictions precluded him from doing so. Rodriguez testified that he worked in pain, but performed whatever duties were required in order to keep his job. Later, he voluntarily resigned over a dispute with another supervisor. Rodriguez commenced a work search and obtained a job with a condominium complex which he left after three weeks, because the work was beyond his physical limitations. The deputy found that Rodriguez voluntarily limited his income and failed to accept work commensurate with his abilities. In so finding, the deputy rejected medical opinions restricting Rodriguez's activities, finding the "heavy" duties he actually performed showed the medical opinions to be erroneous. This court reversed, finding that the deputy erred in rejecting unrefuted medical testimony. The court reaffirmed that a wage loss award is not precluded simply because the wage loss occurred after a period of successful post-injury employment, and is attributable in some part to a non-injury related factor. 509 So.2d at 370.
Although the most common method of demonstrating wage loss is evidence of an unavailing good faith work search, such search is not an absolute condition precedent to an award of wage loss benefits. Rather, "deemed earnings may be an acceptable alternative method of proof where the evidence shows a voluntary limitation of income due to medical limitations and disability coupled with a residual ability to earn a certain amount per week." Austen Construction Management Corp. v. Waters, 508 So.2d 763 (Fla. 1st DCA 1987). In other words, in those months in which an employee's actions can be viewed as a voluntary limitation of income, the employee is still entitled to the benefit of deemed earnings under section 440.15(4)(b), Florida Statutes. Kirkland v. Harold Pratt Paving, Inc., 518 So.2d 1320 (Fla. 1st DCA 1987), review denied, 525 So.2d 878 (Fla. 1988); Bado v. Canteen Corporation, 513 So.2d 1364 (Fla. 1st DCA 1987); Terhune v. North Brothers Co., 504 So.2d 499 (Fla. 1st DCA 1987); E.B. Malone Corporation v. Johnson, 425 So.2d 622 (Fla. 1st DCA 1983).
Furthermore, the deemed earnings provision is applicable not only to those months in which a work search is performed but is determined to be inadequate, but also to those months when no work search has been performed. Anderson v. S & S Diversified, Inc., 477 So.2d 591 (Fla. 1st DCA 1985), review denied, 486 So.2d 597 (Fla. 1986). In Anderson, the deputy denied wage loss benefits for two months because there had been no job search during that time. The deputy then applied the deemed earnings provision to diminish wage loss for six months due to a finding that the job search during that time was "sporadic and ineffective." The court affirmed the proportionate denial of wage loss for the six months when the deputy found the claimant voluntarily limited his income, but reversed that portion of the order in which the deputy failed to apply the same computation to the two months that the claimant conducted no work search.
*1390 In this case, the deputy found that Baggett has some limitations with regard to use of his right arm, and further found that since December 18, 1981, Baggett has had the ability to do uninterrupted light work at table height, and to lift weights of no more than twenty-five pounds. In making these findings, and in determining that Baggett has a deemed earning capacity of $6.00 per hour for a forty-hour work week, the deputy has implicitly found that Baggett's compensable injury is related to his diminished earning capacity.
Despite this recognition of causal relationship between compensable injury and diminished earning capacity, the deputy denied wage loss for the period that Baggett lived and worked with his wife in Altha. We conclude that the deputy commissioner erred in failing to apply the deemed earnings provision to the December 1981 through August 1987 period, while simultaneously applying the deemed earnings rule to the subsequent months when Baggett was subject to the same factors which had caused a diminished earning capacity.
Therefore, we reverse the denial of temporary partial wage loss benefits during this period, and remand for entry of an order awarding proportionate benefits for the period from December 18, 1981, through August 31, 1987. Anderson v. S & S Diversified, Inc., 477 So.2d 591 (Fla. 1st DCA 1985). On remand, the deputy commissioner should determine Baggett's post-injury earnings according to the methodology prescribed in City of Hialeah v. Jimenez, 527 So.2d 936 (Fla. 1st DCA 1986), taking further evidence at his discretion.
BOOTH and MINER, JJ., concur.