# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 28, 2012

No. 11-60868

Lyle W. Cayce
Clerk

BERTHA MOSELEY HILLMAN; TOXEY G. COLLINS; JOE MICHAEL
MAYO; WILLIAM THOMAS COTTOM, JR.; NUMA L. MARQUETTE, JR.;
GAIL MARQUETTE; JAMES M. WARNER; CONSTANCE M. WARNER;
MICHAEL ELLIS; KELLY ELLIS; M. ELLIS FAMILY HOLDINGS, L.L.C.,

Plaintiffs-Appellants

v.

EMERSON P. LOGA, III; DENNIS STIEFFEL; DOUGLAS R. JOHNSON,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, SMITH, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Plaintiffs-Appellants appeal the district court's grant of summary

judgment in favor of Defendants-Appellees, based on the district court's finding

that the 24-month construction obligations in the Purchase Agreements[1] were

---

[1] The Purchase Agreements that Lacote executed with Plaintiffs-Appellants Bertha
Hillman; Michael Ellis, Kelly Ellis and M. Ellis Family Holdings; Toxey G. Collins; Joe
Michael Mayo; William Thomas Cottom, Jr.; Numa L. Marquette, Jr.; Gail Gilly Marquette;
Constance M. Warner; and James M. Warner contain identical relevant provisions for the
purposes of this dispute and will be collectively referred to as the "Purchase Agreements."

No. 11-60868

not illusory and, therefore, the parties' contracts are exempted from the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, *et seq.*, ("ILSA").

## FACTS AND PROCEEDINGS

Plaintiffs-Appellants ("Purchasers") each owned condominium units at the Village at Henderson Point (the "Village") located in Pass Christian, Mississippi. Hurricane Katrina destroyed the condominium complex in August 2005. In early 2007, Purchasers retained Lacote, LLC ("Lacote") to rebuild the complex in the same location. Lacote was made up of three members, Emerson P. Loga, III ("Loga") and Dennis Stieffel ("Stieffel"), and Douglas Johnson ("Johnson").[2]

In furtherance of the plan to develop and construct the new condominium complex, Lacote acquired the Village property from the Purchasers. The purchase was financed through Trustmark National Bank ("Trustmark"), which received a first position lien on the property and committed to provide construction financing for the project.

Prior to construction, Purchasers executed Purchase Agreements and made deposits with Lacote for the purchase of individual units once the complex was completed. The Purchase Agreements stipulated that construction of the units would be completed within two years of the execution of the Agreements.

Construction began in January 2008, but Lacote did not have adequate funding and stopped construction in June of that year, when the project was only 35% complete.[3] Lacote thus obtained a second construction loan from SI Realty Enterprises, Inc. ("SI Realty") in the amount of $1.5 million. SI Realty secured its loan with a second position lien through a deed of trust against the property.

---

[2] Although Johnson was named as a defendant in the complaint, he was never served with process. Plaintiffs-Appellants informed the district court that they had exhausted efforts to locate Johnson and therefore agreed to dismiss their claims against Johnson without prejudice.

[3] At the expiration of the two-year construction period provided for in the Purchase Agreements, Lacote still had completed only 35% of construction on the property.

No. 11-60868

Trustmark allegedly backed out of its commitment to finance the project and Lacote thereafter could not make its loan payments to SI Realty. SI Realty purchased Trustmark's first lien and foreclosed on the property in January 2009. Lacote filed for, and has been discharged from, bankruptcy.

Purchasers filed the instant lawsuit in May 2010 alleging that Loga, Stieffel, and Johnson, as individual members of Lacote, violated the anti-fraud provisions of the ILSA, 15 U.S.C. § 1703(a)(2).[4] The parties filed cross-motions for summary judgment and the district court granted summary judgment in favor of Loga and Stieffel. The district court concluded that because the Purchase Agreements contain an obligation to complete construction within two years, the sales are exempt from the ILSA's requirements, *see* 15 U.S.C. § 1702(a)(2), and Loga and Stieffel therefore cannot be held liable under the ILSA.

## STANDARD OF REVIEW

This court reviews "a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Noble Energy Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008). Summary judgment is thus proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "Doubts are to be resolved in favor of the nonmoving part, and any reasonable inferences are to be drawn in favor of that party." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003).

---

[4] Appellants assert that they must seek to impose liability under the ILSA against Loga and Stieffel, individual members of Lacote, because Lacote (the Seller bound by the Purchase Agreements) filed for and was discharged in bankruptcy, leaving Appellants with no available remedy against Lacote if they were to pursue breach of contract claims. *See* 15 U.S.C. §§ 1703, 1709.

No. 11-60868

The district court correctly stated that interpretation of the ILSA is governed by federal law, *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991), and that state law (in this case, the law of Mississippi) governs the interpretation of the Purchase Agreements. *ACS Constr. Co. of Miss. v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003).

## DISCUSSION

The district court ruled that the Purchase Agreements are exempt from the ILSA because the language imposing a 24-month construction term requirement brings the agreements within the ILSA's two-year building exemption.[5] The two-year building exemption is found in § 1702(a)(2) of the ILSA and states in relevant part:

> (a) Sale or lease of lots generally
> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to–. . .
> (2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years . . . .

15 U.S.C. § 1702(a)(2). Each of the Purchase Agreements states in relevant part:

> COMPLETION DATE AND CONSTRUCTION.
> a. Notwithstanding any other provision of this Agreement, construction of the Unit shall be completed on or before twenty-four (24) months or less from the date of execution of this Purchase Agreement OR a Certificate of Occupancy has been issued by the relevant building authority, whichever is sooner, provided, however, that SELLER shall not be responsible for delays caused by circumstances recognized by Mississippi law to constitute impossibility of performance, such as war, strikes, insurrection, Acts

---

[5] The ILSA is a consumer protection statute that "was enacted as a measure 'to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property.'" *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011) (quoting *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 99 (5th Cir. 1978)).

No. 11-60868

of God, or unanticipated shortage of building materials.

This language from the Purchase Agreements, on its face, obligates the Seller (in this case, Lacote) to complete the building of the Village within 24 months, as contemplated in the exemption articulated in 15 U.S.C. § 1702(a)(2).[6]

Appellants, however, contend that the 24-month building requirement included in the Purchase Agreements is illusory because Appellants' abilities to seek damage and specific performance remedies are limited and, therefore, the Purchase Agreements remain subject to the provisions of the ILSA. This court has not yet set forth the exact parameters of the two-year exemption under § 1702(a)(2), but the Eleventh Circuit has construed, as a matter of federal law, the two-year ILSA exemption to be limited to contracts that impose a "legal duty" on the developer to construct a building within two years. *See e.g.*, *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 854 (11th Cir. 2009) (holding that in order to qualify for the ILSA's two-year exemption, the contract must impose a legal duty on the developer to perform his promise to construct the condominium within two years). "The nature and extent of the duty a contract imposes, however, is a matter of state contract law." *Id.*

---

[6] Federal district courts have held that contract provisions which allow for delays of construction completion beyond the two-year period contemplated in 15 U.S.C. § 1702(a)(2) are acceptable for purposes of qualifying for the two-year exemption if such delays "are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected." *Barry v. Midtown Miami No. 4, LLC*, 651 F. Supp. 2d 1320, 1326-27 (S.D. Fla. 2008) (quoting HUD Guidelines); *see Maguire v. Southern Homes of Palm Beach, LLC*, 591 F. Supp. 2d 1263, 1268 (S.D. Fla. 2008); *Mosher v. Southridge Assocs., Inc.*, 552 F. Supp. 1226 (W.D.Pa. 1982); *see also* Supp. Info. to Part 1710: Guidelines for Exemptions Available Under the ILSA ("Contract provisions which allow for nonperformance or for delays on construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected. For example, provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible."). Therefore, as Appellants concede, the language in the Purchase Agreements stating, "SELLER shall not be responsible for delays caused by circumstances recognized by Mississippi law . . . ." does not render the 24-month construction requirement illusory.

No. 11-60868

Under Mississippi law, a contract obligation is illusory if the words of the agreement "'do not purport to put any limitation on the freedom of the alleged promisor, but leave his future action subject to his own future will, just as it would have been had he said no words at all.'" *Marshall Durbin Food Corp. v. Baker*, 909 So. 2d 1267, 1275 (Miss. Ct. App. 2005) (quoting *Krebs ex rel. Krebs v. Strange*, 419 So. 2d 178, 182-83. (Miss. 1982)). "Such an illusory promise is neither enforceable against the one making it, nor is it operative as a consideration for a return promise." *Id*.

Mississippi law does not provide much guidance on whether creation of a legal obligation requires both damages and also specific performance as available remedies. Notably, the HUD Guidelines, which discuss what constitutes an "obligation" for the purpose of § 1702(a)(2), state that:

> [C]ontracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct. HUD's position is not that a right to specific performance of construction must be expressed in the contract, but that any such right that purchasers have must not be negated. For example, a contract that provides for a refund or a damage action as the buyer's sole remedy would not be acceptable.

Supp. Info. to Part 1710: Guidelines for Exemptions Available Under the ILSA (hereafter, "HUD Gdl. Supp. to Pt. 1710").[7] This court has stated that while the HUD Guidelines "are entitled to a degree of deference, we consider them only to the 'extent that those interpretations have the power to persuade[.]'" *Nickell*, 636 F.3d at 755 (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)) (internal quotation marks omitted). The HUD Guidelines are unambiguous, and no federal court has held to the contrary, that an obligation for the purpose of § 1702(a)(2) means that the availability of a specific performance remedy cannot be negated. *Compare* HUD Gdl. Supp. to Pt. 1710 *with, e.g., Ndeh v. Midtown*

---

[7] This document is available at
http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/rmra/ils/ilsexemp.

6

No. 11-60868

*Alexandria, L.L.C.*, 300 F. App'x 203, 206–08 (4th Cir. 2008) (indicating that specific performance must be available)*; Maguire*, 591 F. Supp. 2d at 1269–70 (same); *Pellegrino v. Koeckritz Dev. of Boca Raton, LLC*, No. 08-cv-80164, 2008 WL 6128748, at *3 (S.D. Fla. July 10, 2008) (same).[8]  Ultimately, however, we need not address whether a  specific performance remedy necessarily need be available in order to create a legal obligation because, as explained below, we find that the language of the Purchase Agreements did not negate Purchasers's abilities to seek damage and specific performance remedies.

Although the district court's Memorandum and Opinion and Order cites five provisions of the Purchase Agreements that the district court considers relevant to the question of whether the obligation to build within two years is illusory, Appellants limit their argument to only two of these provisions.  The first of these provisions is the "Default" provision, found under Section 14 of the Purchase Agreements.[9]  The language in the "Default" provision, "PURCHASER shall be entitled to the refund of his downpayment as well as any other monies he may have advanced SELLER" in the event of Seller's default for any reason, does not specifically limit Appellants' available remedies under the Purchase Agreements.  Instead, the language "shall be entitled to" gives Purchasers the

---

[8] Moreover, the Purchase Agreements are real estate contracts and Mississippi courts consider "specific performance as a 'particularly appropriate remedy' in matters pertaining to a breach of a real estate contract, because of real estate's unique nature." *Houston v. Willis*, 24 So.3d 412, 418 (Miss. Ct. App. 2009) (citation omitted).

[9] The "Default" provision states, in relevant part:
b. If for any reason consummation of this transaction is prevented after acceptance of this Agreement by SELLER'S default hereunder, the PURCHASER shall be entitled to the refund of his down payment as well as any other monies he may have advanced SELLER.  Notwithstanding the foregoing, to the extent that any of PURCHASER'S advanced monies has gone into construction of improvements development on the property, PURCHASER'S claim for return of such portion of the down payment shall be subordinate to the lien(s) of the construction lender's deed(s) of trust and shall be the full responsibility of the SELLER to make the appropriate refund.

No. 11-60868

option to seek a refund remedy.[10] Mississippi law emphasizes the importance of specific language to negate a party's ability to sue for specific performance or damages, *see Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989), and this Purchase Agreement language offering a refund option to Purchasers does not prevent them from seeking damages or specific performance.

The second provision relied upon by Appellants in arguing that the Purchase Agreements limited their ability to seek a remedy is the "Down Payment" provision, found in Section 3 of the Purchase Agreements, which states in relevant part:

> a. **CONVEYANCE OF UNDIVIDED INTEREST TO PURCHASER**: As partial consideration for monies advanced to SELLER by PURCHASER via down payments and/or Reservation Deposits (all of which are being considered partial payments in furtherance of this Agreement), after Seller acquires subject real property upon which the Village on the Beach condominium regime will be built, Seller will convey to Purchaser his predetermined undivided interest in the common areas in the condominium development which Purchaser will hold subject to any and all loans under which the property as a whole may be collateralized. All parties acknowledge that, if for any reason, this Purchase Agreement should not be consummated by a Sale/Purchase closing within the time contemplated by this Agreement, Lacote, LLC will refund all monies (payments) deposited by Purchaser wherein Purchaser will relinquish and convey their undivided interest in subject property to Seller.

Appellants contend, "[t]his clause requires Purchasers to relinquish and convey their undivided interest in the Village property to Seller in lieu of specific performance and limit[s] Purchasers' alleged remedies to refund of deposits."

We agree that the "will refund" and "will relinquish" language mandates the fulfillment of such requirements by the parties in the event that the

---

[10] This availability of this option is further supported by the language later in the provision setting forth that the Purchaser's "claim for return of . . . the down payment . . . shall be the full responsibility of the SELLER to make the appropriate refund."

No. 11-60868

Purchase Agreement is not "consummated by a Sale/Purchase closing . . . ." However, the "Down Payment" provision discusses conveying to the Purchaser "his predetermined undivided interest in the common areas in the condominium development" in the sentence immediately preceding the sentence requiring that, "Purchaser will relinquish and convey their undivided interest in subject property to Seller." Therefore, the "undivided interest in subject property" logically refers to the "undivided interest in the common areas" that are the subject of this particular "Down Payment" provision. Appellants present no reason why "undivided interest in subject property" should instead be interpreted as referring to Purchasers' interest in their specific, bargained for condominium units. More importantly, nothing in the "Down Payment" provision specifically negates Appellants' right to pursue damages or specific performance, and, as we previously described, Mississippi law looks to specific language negating a party's ability to sue for damages or specific performance. *See Osborne*, 549 So. 2d at 1339.

Finally, Appellants argue that the Purchase Agreements are illusory because their interest in the property was subordinate to third parties and Loga and Stieffel never had the capital to return Appellants' deposits. We do not dispute that this was a bad deal for Appellants. However, even if the likelihood of Purchasers's getting certain remedies was less likely under this Agreement and the particular circumstances surrounding it, the terms of the Purchase Agreements did not nullify Lacote's obligation to build by negating Appellants' ability to sue for remedies. The reason that Appellants now have no available practical relief is not a deceivable duty, a contractual defect which allowed Lacote to cease construction without legal consequence; the obstacle to recovery, instead, has been Lacote's insolvency.[11]

---

[11] For the same reason, Appellants' argument that Lacote's obligation to construct within 24 months was illusory because "Lacote had no capital investment, no construction loan

No. 11-60868

## CONCLUSION

For the reasons discussed above, we AFFIRM the district court's grant of summary judgment in favor of Defendants-Appellees Loga and Stieffel.

---

and no performance bond for a twenty-four million dollar project," thereby making it "impossible" for Lacote and Appellants to complete construction of the Village within 24 months of signing the Purchase Agreements, is unavailing.