David Alan Ezra, Senior United States District Judge
The matters before the Court are (1) Defendants Ace American Insurance Company ("Ace American") and Ace Property and Casualty Insurance Company's ("Ace Property") (collectively, "Defendants" or "Ace") Motion for Partial Summary Judgment on Fully Adversarial Trial (Dkt. # 46), and (2) Plaintiff CBX Resources, LLC's ("CBX") Motion for Partial Summary Judgment that the Underlying Judgment is Binding and Admissible (Dkt. # 47).
On June 27, 2018, the Court held a hearing on these matters. CBX was represented by Mark Fassold; Defendants were represented by Daniel Lane. After careful consideration of the memoranda in support of and in opposition to the motions, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, GRANTS Ace's motion for partial summary judgment, and DENIES CBX's motion for partial summary judgment.
FACTUAL BACKGROUND
CBX was the lessee of the Hibdon Lease, a mineral tract located in Zavala County, Texas. (Dkt. # 16 at 7.) As lessee, CBX arranged for the drilling and operation of the Picosa Creek IV Well ("the Well") to be performed by Espada Operating, LLC ("Espada"). (Id. ) In 2011, Espada *855 drilled the well bore, placing almost 900 feet of surface casing and more than 5,700 feet of production casing into the Well, and it installed a fracking system into the production casing. (Id. ) On October 25, 2011, Espada attempted to pressurize the fracking system; a few months later, on January 25, 2012, Espada attempted to pull the production casing out of the well bore. (Id. ) In pulling out the production casing, Espada discovered a fracture of about 3,400 feet in the Well. (Id. ) Espada determined that the production casing below the fracture could not be recovered from the well bore. (Id. ) Because the casing was irremovable, the well bore could not be restored, and the Well was plugged and abandoned as a result. (Id. )
Espada was a named insured on a Commercial General Liability ("CGL Policy") issued by Ace American, with a coverage period from April 2, 2011, through April 2, 2012. (Dkt. # 16 at 7.) The CGL Policy was accompanied by an "Underground Resources and Equipment Coverage Endorsement," which replaced and/or added exclusions in the CGL Policy, while also adding certain definitions to the CGL Policy. (Id. ) Espada was also a named insured on an Umbrella Policy issued by Ace Property, which covered the same policy period of April 2, 2011, through April 2, 2012. (Id. )
PROCEDURAL BACKGROUND-STATE COURT CASE
On February 21, 2013, CBX brought suit for damages arising from its total loss of the use of the Well against several defendants-but not Espada-in the 293rd Judicial District Court of Zavala County, Texas ("underlying case"). (Dkt. # 16 at Ex. C.) In October 2013, CBX amended its state court petition, adding Espada as a defendant, and appending a Certificate of Merit of a licensed engineer who described Espada's role in the failure of the Well. (Id. at Ex. D.) According to CBX, Espada filed its original answer on November 19, 2013, represented by counsel retained by Ace American after Espada tendered the defense of the lawsuit to Ace.[1] (Id. at Exs. E, L.) The state court set a trial in this case for February 9, 2016. (Id. at Ex. F.)
On August 7, 2015, CBX filed its second amended petition, itemizing alleged damages to its tangible property including: drilling operations, surface casing, unrecovered production casing, the Well and the well bore, the oil and gas itself, and the lease. (Dkt. # 16 at Ex. G.) On August 13, 2015, Espada filed a third party petition, suing three separate parties. (Id. at Ex. H.) Espada's third party petition stated that it "alleges that a catastrophic failure of the casing occurred down hole in the Well," and that the "Well allegedly could not be repaired and was plugged and abandoned." (Id. )
On September 22, 2015, CBX served a Stowers demand upon Espada through its counsel, seeking to fully and unconditionally release its claims for an amount within the limits of the policies issued to Espada by Ace American and Ace Property. (Dkt. # 16 at Ex. I.) By its terms, the Stowers demand was set to expire on October 23, 2015, at 5:00pm. (Id. )
However, on October 15, 2015, the Claims Director for Ace American, Matthew Spector, sent a withdrawal letter to Espada. (Id. at Ex. K.) The letter indicated that Ace American intended "to cease the retention of defense counsel effective fourteen days from that date of [the] letter," or, on October 29, 2015. (Id. ) Mr. Spector's letter characterized CBX's claims as non-professional *856 liability negligence claims. (Id. ) On November 30, 2015, approximately 71 days before the February 9, 2016 trial setting, the state court granted Espada's defense counsel's motion to withdraw as counsel. (Id. at Exs. L, M.)
A pre-trial hearing was held in the state court case on February 1, 2016; Espada failed to appear at the hearing. (Dkt. # 16 at Ex. N.) Because of Espada's failure to appear at the hearing, CBX requested the state court enter judgment in CBX's favor against Espada.[2] (Id. ) The Court ordered that judgment be entered in CBX's favor and set the matter for February 10, 2016, to hear evidence in support of damages. (Id. ) On February 10, 2016, the state court heard evidence from CBX's witnesses and exhibits in support of its claim. (Id. at Ex. O.) The state court entered judgment, finding that Espada was negligent and awarded damages and post-judgment interest payable to CBX by Espada. (Id. at Ex. N.) According to CBX, the judgment became final and is no longer appealable. (Dkt. # 16 at 10.)
On November 1, 2016, the state court entered an Order for Turnover Relief ("turnover order"), transferring ownership of Espada's causes of action against Ace American and Ace Property to CBX.[3] (Dkt. # 16 at Ex. P.) The turnover order also compelled Espada to execute an assignment of those claims to CBX; according to CBX, Espada has complied with that portion of the turnover order. (See id. at 11; Ex. P.)
PROCEDURAL BACKGROUND-FEDERAL COURT CASE
On January 10, 2017, CBX filed suit in this Court against Ace American and Ace Property. (Dkt. # 1.) Its first amended complaint alleges claims against Defendants for (1) breach of the Stowers duty to reasonably settle claims within the scope of coverage and for an amount within the limits of the applicable policy; (2) bad faith; (3) breach of contract; (4) deceptive insurance practices; and (5) declaratory judgment regarding Defendants' duties to defend and indemnify Espada in the underlying case. (Dkt. # 33.)
Pursuant to the Court's scheduling order entered in this case on April 13, 2017, the parties were allowed to file partial motions for summary judgment regarding Ace's duty to defend the underlying case based on the terms and conditions of the CGL Policy and the Umbrella Policy. (Dkt. # 14.) In accordance with that Order, CBX and Ace filed cross motions for partial summary judgment on Ace's duty to defend in the underlying case. On October 16, 2017, the Court granted Ace's motion and denied CBX's motion, finding that the insurance policy at issue does not apply to the type of property damage alleged by CBX. (Dkt. # 47.) Accordingly, the Court held that Ace did not have a duty to defend Espada in the underlying case. (Id. )
In accordance with the Court's scheduling order, the parties were allowed to file a second motion for partial summary judgment. On October 20, 2017, Ace filed its motion, seeking a declaration that the underlying judgment that CBX obtained against Espada in the underlying case is not binding on Ace nor admissible as evidence of damages in the instant suit.[4] (Dkt.
*857 # 46.) CBX filed its motion on the same day, asking the Court to declare that the underlying judgment is binding and admissible and fixes the actual amount of damages of its Stowers claim in an amount in excess of the judgment rendered. (Dkt. # 47.) The motions have been fully briefed and are now ready for disposition.
APPLICABLE LAW
A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact," and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) ; see also Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial. Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) ). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ).
In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ). At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. See Fed. R. Civ. P. 56(c) ; Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003) ).
ANALYSIS
Ace moves for partial summary judgment on Count 21 of its First Amended Counterclaim for Declaratory Relief, seeking a judicial declaration that the underlying judgment that CBX obtained against Espada is neither binding on Ace nor admissible as evidence of damages in this lawsuit because it was not the result of a fully adversarial trial. (Dkt. # 46.) Conversely, CBX argues in its motion that the underlying judgment was in fact the result of a fully adversarial proceeding and therefore it is binding and admissible as evidence in this case. (Dkt. # 47.) Because both CBX and Ace's motions for partial summary judgment concern the same issue, the Court will consider them together. (See Dkts. ## 46, 47.)
*858 A. Fully Adversarial Trial
The Texas Supreme Court held in State Farm Fire & Casualty Co. v. Gandy that "[i]n no event ... is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer ...." 925 S.W.2d 696, 714 (Tex. 1996).
Recently, the Texas Supreme Court issued an opinion in Great American Insurance Co. v. Hamel, 525 S.W.3d 655 (Tex. 2017), addressing certain questions that have arisen since Gandy. For instance, in Hamel, the court interpreted the phrase "fully adversarial" as used in Gandy. Id. at 661-67. The court noted that, under prior authority, a determination of "fully adversarial" required courts to "retroactively evaluate and thus second-guess trial strategies and tactics, which ... often produces an inaccurate and unreliable result." Id. at 666. The court concluded that "[t]his misplaced focus on trial details likely results from a misinterpretation of the phrase 'fully adversarial.' " Id. The court held:
Today we clarify that the controlling factor is whether, at the time of the underlying trial or settlement, the insured bore an actual risk of liability for the damages awarded or agreed upon, or had some other meaningful incentive to ensure that the judgment or settlement accurately reflects the plaintiff's damages and thus the [insured defendant's] covered liability loss....
We believe adversity turns on the insured defendant's incentive to defend (or lack thereof), and an after-the-fact evaluation of the parties' trial strategies therefore has no place in the analysis.
Id. at 665-67 (emphasis added).
In Hamel, the insured entered into an agreement with the claimant prior to trial that "eliminated any meaningful incentive" for the insured to contest a judgment against the claimant. Id. at 666. The court held that, "[w]hen the parties reach an agreement before trial or settlement that deprives one of the parties of its incentive to oppose the other, the proceeding is no longer adversarial." Id."Stated another way, proceedings lose their adversarial nature when, by agreement, one party has no stake in the outcome and thus no meaningful incentive to defend itself." Id.
B. Was the Underlying Judgment the Product of a Fully Adversarial Trial?
Based on Hamel, the dispositive issue for the Court to decide here is (1) whether Espada bore any actual risk of liability for the damages at the time of the underlying judgment, or (2) whether Espada had some other meaningful incentive to ensure the underlying judgment accurately represented CBX's damages in the state court case. See Hamel, 525 S.W.3d at 665-67.
Ace contends that CBX faced no actual opposition in the underlying suit because Espada defaulted, thereby failing to even show up for the trial. (Dkt. # 46 at 2.) Ace further contends that there is no dispute that Espada had ceased any business operations by February 2013, several months before CBX added Espada to the underlying suit, and therefore had no assets or income. (Id. ) Ace also asserts that Espada had millions of dollars in liability, and was prohibited from acting as an oil and gas operator by order of the Texas Railroad Commission. (Id. ) Therefore, according to Ace, Espada was defunct and insolvent and had no real stake in the outcome of the underlying suit, nor did it have any incentive to defend itself. (Id. )
*859 Ace further highlights its argument by asserting that the very manner in which the $105 million judgment occurred underscores the complete absence of an adversarial proceeding. (Dkt. # 46 at 2.) Ace argues that the exorbitant amount of the judgment is comprised of speculative damages that are not recoverable under Texas law and are in fact barred by Espada's contract with CBX. (Id. ) Instead, Ace argues the damages portion of the underlying judgment was a sham proceeding that the Texas Supreme Court sought to eradicate when it imposed the fully adversarial requirement. (Id. at 3.)
CBX, on the other hand and in support of its position that the underlying judgment was the result of a fully adversarial trial, asserts that there was no pretrial agreement that eliminated Espada's financial risk of liability for the damages awarded during the underlying trial. (Dkt. # 47 at 12.) CBX also contends that Espada had a meaningful stake in the outcome of the underlying litigation and Espada attempted to hire counsel to sue Ace to force Ace to resume Espada's defense in the underlying suit. (Id. at 18.)
In Hamel, the insured-defendant and the plaintiff entered into a pretrial agreement in the underlying suit, which removed the insured-defendant's stake in the outcome and the corresponding incentive to defend itself. Hamel, 525 S.W.3d at 668. The court determined that "[a]fter the agreement was executed, [the suit for damages against insured-defendant] no longer involved opposing parties, and the trial that followed was not fully adversarial." Id. The Texas Supreme Court determined then that "the presence of such an agreement creates a strong presumption that the judgment did not result from an adversarial proceeding, while the absence of such an agreement creates a strong presumption that it did." Id. The court went on to say that "the insurer may overcome the presumption by demonstrating that, even though the plaintiff and insured defendant did not enter into any formal, written agreement, the evidence nonetheless establishes that the defendant had no meaningful stake in the outcome of the underlying litigation." Id. The court, however, cautioned that "the presumption of adversity may [not] by overcome solely by evidence that a defendant has minimal assets" and that "[s]omething more is required to demonstrate a lack of incentive to defend in the absence of an agreement affirmatively removing such an incentive." Id. at 668 n.9.
In considering Hamel to the facts in this case, the Court notes that, unlike here, the insured-defendant in Hamel executed a pretrial agreement with the plaintiff. Thus, under the Texas Supreme Court's instruction in Hamel, the Court should normally apply the presumption that the lack of any pretrial agreement in this case suggests that the underlying judgment was the result of a fully adversarial proceeding. However, the facts in Hamel are distinguishable from the facts here. In Hamel, the insured-defendant-represented by counsel-still attended the damages hearing. See Hamel, 525 S.W.3d at 665-66. Therefore, while Hamel contemplated a situation where, as here, the parties did not enter into a pretrial agreement, Hamel did not address the situation before this Court where the insured-defendant failed to show up at all at the time of trial after it lost its defense from the insurer. Ace argues therefore that the presumption in Hamel should not apply in this case because of Espada's failure to show up at all to the trial and damages hearing.
Assuming without deciding that the presumption applies in this case, the Court finds that, in any case, Ace has presented sufficient evidence that Espada had no *860 meaningful stake in the underlying judgment. Once Ace withdrew its defense of Espada in the underlying case, there is no real dispute that Espada lacked the financial resources to retain an attorney to maintain its defense. (See Dkt. # 47 at 7; Dkt. # 46-1 Ex. 4 at 72:13-19, Ex. 3 at 26:22-25.) It is also undisputed that the Texas Railroad Commission prohibited Espada from acting as a well operator, thereby prohibiting a major part of its operations. (See id. ) While this is some evidence that Espada lacked a meaningful stake, the Court cannot consider a lack of financial resources by itself in making such a determination. See Hamel, 525 S.W.3d at 668 n. 9. Thus, as further evidence, Ace points to the fact that Espada completely failed to show up at all at the trial and subsequent damages hearing. (Dkt. # 46 at 20.)
Extending Hamel and Gandy to the most straight-forward interpretation, the fact that Espada failed to appear at docket call in the underlying trial and damages hearing, leads the Court to believe that the trial and underlying judgment was not fully adversarial and therefore cannot be used as evidence in this case. However, to combat this conclusion, CBX asserts that although Espada did not show up at the trial or damages hearing, it had very valid reasons for not attending, none of which were related to its lack of material or financial interest in the outcome. For instance, CBX contends that Espada's president did not attend "solely because of his physical limitations as a quadriplegic and not because of any other reason." (Dkt. # 49 at 13.) CBX also argues that Espada's business manager did not attend because he "had been told in other cases that individuals could not represent corporate entities" and because the proceedings were being held in Zavala County and not for any other reason. (Id.; Ex. U at 37:14-38:19.)
CBX also argues that at the time of trial, Espada still had a meaningful stake in the outcome of the underlying litigation because (1) it held the right to receive a fee in exchange for making several different wells produce and it did not want to have a judgment against it if it wanted to continue its business; (2) it attempted to hire counsel to sue Ace to force Ace to continue its defense in the underlying litigation, but the law firm declined to take the case; (3) to this day, Espada remains a going concern in that the business has never been dissolved and it still presently files tax returns; and (4) as an operating company, Espada did not need any assets to generate revenue because "its assets were the people that were running it as managers," and that it was designed to be insolvent as a result of "incurring liabilities like for these plugging of wells." (Dkt. # 47 at 19-20; Ex. U at 52:20-53:9.)
In considering all of the evidence together, the Court finds that the $105 million underlying judgment entered against Espada was not the result of a fully adversarial proceeding. While CBX has produced some evidence that Espada did in fact attempt to hire counsel to sue Ace into continuing to defend Espada in the underlying suit (see Dkt. # 47 at 19; Ex. U at 34:20-36:15; 36:16-37:5), CBX has failed to show that Espada attempted to hire counsel to defend itself. (See, e.g., Dkt. # 49-25 at 32.) Ace's summary judgment evidence includes deposition testimony from Espada's manager, who stated that Espada never attempted to find an attorney to defend Espada in the underlying suit because it would amount to "throwing good money after bad." (Dkt. # 46, Ex. 4 at 72:3-10.) And while CBX's reasons for Espada's failure to physically show up at the proceedings seem valid on their face, and despite making other arguments that Espada was still a viable company at the time of the underlying judgment, CBX has not explained *861 why Espada was unable to submit a written letter or some other evidence concerning Espada's defense or position on CBX's damages. Thus, even if Espada was in a dire financial situation, there are some steps it could have likely taken to more readily defend itself from the extraordinary $105 million in damages obtained against it.
In fact, the only evidence produced at the damages proceeding in the underlying suit was from CBX. (See Dkt. # 1-18.) At that proceeding, CBX produced six witnesses and 47 exhibits, without any witnesses or testimony from any other party. (Id. ) Such a proceeding is antithetical to an "adversarial proceeding." See Gandy, 925 S.W.2d at 714 ; Hamel, 525 S.W.3d at 666 (defining "adversarial" as "when the parties oppose each other"). At the proceeding, it was clear there was no opposition to the amount of damages claimed by CBX.
Accordingly, while it is true that there are differences in the facts of this case in comparison to Hamel-i.e., no pretrial agreement and no clear evidence of collusion by the parties to take advantage of the insurer, the fact that (1) Espada failed to show up at all, physically or otherwise, to defend itself at the underlying proceedings once Ace withdrew its defense, and (2) the damages hearing was clearly non-adversarial as CBX was the only party in attendance, taken in combination with (3) Ace's evidence that Espada was financially unstable, all lead the Court to conclude that the underlying judgment was not the result of a fully adversarial proceeding.[5] Furthermore, one of Espada's managers agreed in deposition testimony that it was his belief that by the time the underlying case went to trial, "Espada had no meaningful stake in the outcome because it was not a going concern."[6] (Dkt. # 46, Ex. 4 at 72:13-19.)
Based on the foregoing, the Court finds that Ace has produced sufficient evidence that Espada did not have a meaningful incentive to ensure that CBX's default judgment accurately reflected its damages. See Hamel, 525 S.W.3d at 668. Accordingly, the Court finds that the underlying judgment was not the result of a fully adversarial proceeding, and thus it is not binding on Ace in this suit. See id. ("The defendant's insurer is often the plaintiff's only real source of recovery, but without the insurer's involvement in the lawsuit the likelihood of a fully adversarial trial diminishes substantially."). The Court will therefore grant Ace's motion for partial summary judgment on this issue, and deny CBX's motion on the same.
CONCLUSION
Based on the foregoing, the Court GRANTS Ace's Motion for Partial Summary Judgment on Fully Adversarial Trial (Dkt. # 46), and DENIES CBX's Motion for Partial Summary Judgment that the Underlying Judgment is Binding and Admissible (Dkt. # 47). Given the Court's rulings on the instant partial summary *862 judgment motions, as well as its prior rulings on the parties' first partial summary judgment motions, the Court will require the parties to provide a joint status report, or separate reports if the parties do not agree, on the remaining issues in this case. To the extent the Court's rulings, in effect, dismiss some of the claims in the case, the parties should so instruct the Court and move to dismiss such claims. The parties will have twenty-one days from the date of this Order to file the report(s).[7]
IT IS SO ORDERED.

According to Ace, however, Espada had ceased doing any business operations sometime in 2012, due to a lack of funding. (See Dkt. # 17 at 5-6.)

CBX had apparently settled with the other defendants in the case. (See Dkt. # 17 at 8-9.)

Espada's causes of action against Ace American and Ace Property arise from their refusal to defend and indemnify Espada. (See Dkt. 16 at 11, Ex. P.)

While the Court has already determined that Ace had no duty to defend Espada in the underlying suit, CBX has also asserted claims against Ace based on estoppel and alleged violations of the Texas Insurance Code. (Dkt. # 33.)

The Court further distinguishes Hamel on the basis that there was no dispute in Hamel that the insurance company wrongfully refused to defend the insured; here, the Court has already determined that Ace had no duty to defend Espada in the underlying case. (Dkt. # 45.) Hamel instructs however that "an insurer's wrongful failure to defend is no longer dispositive." Hamel, 525 S.W.3d at 665. In any case, the Court finds no merit to CBX's argument that "default judgments are binding on insurers that wrongfully defend their insureds" because of the Court's prior determination that Ace had no duty to defend Espada. (See Dkt. # 47 at 15.)

The Court OVERRULES CBX's objections to this testimony, but notes CBX's evidence that other managers of Espada testified differently when asked similar questions. (See Dkt. # 49 at 11 n.8; Dkt. # 49-25 at 32.)

At the hearing, the parties indicated there would also likely be a request for an interlocutory appeal of the Court's Orders on the partial summary judgment motions entered in this case.